**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROLANDO HALL,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:15-1113** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **LT. LIDWELL, <u>et al</u>.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

**I. <u>Background</u>**

Plaintiff, an inmate confined in the Smithfield State Correctional Institution, ("SCI-Smithfield"), Huntingdon, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). Plaintiff names as Defendants the following SCI-Smithfield employees: Lt. Alan Lidwell and Correctional Officer Michael McConoughey. <u>Id</u>.

By Order dated July 1, 2015 Plaintiff was permitted to proceed <u>in forma pauperis</u> and process was issued. (Doc. 8).

On August 19, 2015, Defendants filed a motion to dismiss Plaintiff's complaint for failure to state a claim of denial of access to the courts. (Doc. 14). In response to Defendants' motion, Plaintiff filed an amended complaint. (Doc. 16). Thus, the action proceeds via Plaintiff's amended complaint.

By Memorandum and Order dated November 21, 2016, Defendants' motion to dismiss Plaintiff's amended complaint was denied. (Docs. 25, 26).

On January 5, 2017, Defendants filed an answer to the complaint. (Doc. 30). By Order dated January 23, 2017, the above captioned action was stayed pursuant to the Soldiers and Sailors Civil Relief Act, and Defendant McConoughey was not required to respond to any discovery requests or otherwise participate in the above captioned action until 60 days after his return from overseas military duty. (Doc. 31).

On December 27, 2018, Defendants filed a motion for summary judgment. (Doc. 38). By Order dated April 22, 2019, this Court lifted its January 23, 2017 stay and directed Plaintiff to respond to Defendants' pending motion for summary judgment. (Doc. 44). On May 5, 2019, Plaintiff filed a brief in opposition to Defendants' motion for summary judgment. (Doc. 45). Thus, the motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendants' motion for summary judgment will be **GRANTED**.

## II. **Allegations in the Amended Complaint**

In October, 2013, Hall was transferred to SCI-Smithfield. (Doc. 16). He alleges that on August 15, 2014, he was sent to the Restricted Housing Unit (RHU) with all his property from his single cell. Id.

On August 23, 2014, Plaintiff states that he was "called out of the RHU cell to inventory his property very late and was rushed to go through his property do (sic) the late hour." Id. After being rushed to go through the property, the items were packed and Plaintiff was given confiscated items receipt #23255. Id. The receipt, which was signed by Defendant McConoughey, reflected "2 boxes legal material and hold pending grievance." Id. Plaintiff states that he was "told by the Officer he needed permission for an extra box for legal property" and that Plaintiff "wrote for and was approved." Id.

Plaintiff states that he "received a letter from the court stating that the deadline to file his Amended P.C.R.A. is due on October 15, 2014." Id. He claims that Defendant Lidwell "came to [his] cell for proof of Plaintiff's deadline" and "Plaintiff showed the letter and Lt. Lidwell said another officer will take you to get the legal property." Id. Allegedly, Defendant McConoughey "came to the cell door with one box of legal property and said he could not give [Plaintiff] all of [his] legal boxes." Id. Plaintiff informed McConoughey that he "needed to go through the two legal boxes to get what was needed to do his Amended P.C.R.A. Petition." Id. Defendant McConoughey responded "no, Lt. Lidwell said to give you a few folders from a box and that was his orders."

3

Id.

On October 6, 2014, Plaintiff was released from the RHU and had an opportunity to explain the situation to Deputy Whitesel, who informed Plaintiff "that he would look into the matter and get back with him at a later date." Id.

Plaintiff claims that "due to C/O McConoughey and Lt. Lidwell misplacing and not being able to find Plaintiff's legal box, Plaintiff was unable to file his Amended P.C.R.A. petition in a timely manner with the proper issue to be heard by the court." Id. Specifically, he states that "the documents that were lost in the box by the Defendants were affidavits from witnesses, transcripts and letters from lawyers that were need[ed] to prove Plaintiff's position" that "he meet[s] the time bar exception standard and how said petition was timely." Id.

Plaintiff states that he "did write the Judge again for an extension, but her response was 'You will not be granted any further extension to file your amended petition." Id.

Thus, Plaintiff filed the instant action in which he seeks compensatory and punitive damages. Id.

### III. __Standard of Review__

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the

nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being

6

considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

## IV.    **Statement of Undisputed Facts**

On September 27, 2006, following a jury trial in Philadelphia County, Pennsylvania, Plaintiff was convicted of the following offenses under docket number CP-51-CR0108131-2004: murder of the second degree, robbery-inflict serious bodily injury; burglary and criminal conspiracy to engage in murder. (Doc. 42 at 33, Criminal Docket Sheet). On November 21, 2006, the trial court sentenced Hall to a mandatory sentence of LIFE on the charge of murder of the second degree, with the burglary and robbery merging with the murder charge. Id. Plaintiff was sentenced to a 100 to 200 month term of imprisonment on the criminal conspiracy charge, to run consecutive to the murder sentence. Id. Post-sentence motions were filed on November 30, 2006 and denied on April 3, 2007. Id.

On April 27, 2007, a notice of appeal was filed at 1135 EDA 2007 in the Superior Court of Pennsylvania. Id. The Superior Court denied Plaintiff's appeal and affirmed his sentence on April 15, 2008. Id.

On May 15, 2008 a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania was filed. Id. That Petition, docketed at 264 EAL 2008, was denied on October 17, 2008. Id.

On September 30, 2009, Hall filed a petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). Id. By Order dated February 2, 2010, counsel was appointed. Id. On July 28, 2010, counsel, having concluded that there were no issues of arguable merit, filed a "no merit" letter and a motion to withdraw as counsel. Id. On September 15, 2010, the PCRA court issued a notice of its intent to deny the petition without a hearing pursuant to Pa.R.Crim.P. 907 (907 Notice). Id. On October 1, 2010, Hall filed a response to the court's September 15, 2010 notice. Id. On December 19, 2010, Hall filed an amended PCRA petition, to which counsel responded with an amended "no-merit" letter on February 11, 2011. After conducting a second independent review, on March 25, 2011, the PCRA court dismiss Hall's PCRA petition and granted counsel's motion to withdraw. Id.

On April 21, 2011, Hall filed a notice of appeal from the trial court's dismissal of his PCRA petition. Id. By Order dated March 5, 2012, the Pennsylvania Superior Court granted Hall's motion to withdraw his appeal and the appeal was dismissed. Id.

On June 27, 2012, Hall filed a petition for writ of habeas corpus in the state court. Id.

On August 20, 2012, Hall filed second PCRA petition. Id. On November 17, 2014, the PCRA court, determined the petition was untimely and issued a 907 Notice of intent to dismiss the petition for lack of jurisdiction. Id. By Order dated December 19, 2014, the PCRA court dismissed Hall's PCRA petition as untimely and as failing to satisfy any of the enumerated exceptions to the jurisdictional requirement of 42 Pa.C.S. §9545(b). Id. Although advised of his appeal rights, no appeal was filed. Id.

On March 28, 2016, Hall filed a third PCRA petition, which was dismissed under Rule 907 on May 4, 2017. Id.

The parties do not dispute that Hall was transferred to SCI-Smithfield in October, 2013, and that when he arrived at SCI-Smithfield, he had state-issued property and legal work.

On August 15, 2014, Hall was sent to the Restricted Housing Unit (RHU) as a result of receiving a misconduct. (Doc. 39 at 13). On August 23, 2014, excess property was removed from Hall's cell during RHU inmate processing. (Doc. 41 at 63, Confiscated Items Receipt). RHU Officer Michael McConoughey inventoried inmate Hall's property. Among the property was

9

two boxes of legal materials. Id.

On September 16, 2014, Hall filed Grievance No. 527346-14, requesting his excess property be returned to him. (Doc. 41 at 77, Grievance).

By response dated September 22, 2014, Defendant Lidwell denied Plaintiff's grievance as follows:

> In your grievance dated 9-12-2-14 you claim that excess property was confiscated from you when it was inventoried in the RHU. You also claim that officers rushed you during this inventory process and you are missing legal work which you need to meet a court deadline on October 15, 2014. Finally, you feel that since you are AC status you should be allowed to retain in you cell the AC commissary that came with you from general population. I spoke with you and K-block staff regarding this situation and my findings are as follows. Any excess property over the allowable 4 box limit will remain confiscated until the end of this grievance process at which time you will either have to ship items home or have them destroyed. No video is preserved to verify how much time you actually had to complete your inventory process, but officers assured me that you had more than enough time. When I spoke with you at your cell you told me that you had your allotted 1 full box of property with you. You did provide legal documentation showing a legal deadline of Oct. 15, 2014. RHU staff has been instructed to provide you with a legal exchange so that you may have the necessary documents you need to prepare for your case. Your request to have an extra box of legal material in your cell is currently pending in the Office of Chief Council. Any AC commissary you order while in the RHU will be given to you, however, AC allowable commissary that you brought from general population will not be given to you and must remain in your stored property or remain confiscated in our property storage area. This grievance has been upheld in party/denied in part. I consider these issues resolved.

(Doc. 41 at 78, Initial Review Response).

By correspondence dated September 22, 2014, Superintendent Fisher notified Hall of the approval of Hall's request for additional storage box of legal materials, with the following:

> I have received your request for an additional storage box in conjunction with your case.
>
> CP-51-CR-108131-2004
>
> I have verified through the Office of Chief Counsel that this case is active and you are pro se, therefore, your request for an additional storage box is approved.
>
> You may receive one (1) additional storage box for legal material only in regards to the above noted case.

(Doc. 41 at 81, Memorandum).

On October 6, 2014, Hall was released from the RHU. (Doc. 41 at 39, Deposition of Rolando Hall). Also on October 6, 2014, Hall filed an appeal of Grievance No. 527346-14 to the Facility Manager. (Doc. 41 at 79).

On October 17, 2014, Hall filed Grievance No. 532998-14, requesting monetary damages for the loss of his legal property. (Doc. 41 at 61, Grievance).

By response dated October 27, 2014, Grievance No. 532998-14 was denied by Grievance Officer Sunderland finding the following:

I've investigated your claims and spoken with the involved staff members; the following is s summation of my findings. As you know I had spoken to you regarding your excess property issue several times while you were housed in K Block RHU. You explained that permission had been granted to maintain one additional box of legal material. After consulting with Lieutenant Lidwell and individuals from the Security Office regarding a total Commissary order, it was decided that you would receive all of your property that was being held which included all legal material. Your property was returned to you the week of October 20th. The issue regarding the initial reception inventory and being informed of having excess property is a moot point as you have now received all of it. The issue of how your property was inventoried is unfounded as you were given the opportunity to review all items present, review the items inventoried and make a complaint of items missing at that time. Your only issue at the time was the items being confiscated due to them being in excess of what was permitted by DOC policy. It is also to be noted that this grievance was submitted prior to you receiving all of the property that was being held as excess.

In closing, I can find no evidence of policy/procedural violations by any staff member. Your request for $100,000 is denied as you have since received all of your held property. You are further informed that this grievance is denied as well.

(Doc. 41 at 65, Initial Review Response).

On October 28, 2014, the Facility Manager denied Hall's appeal of

Grievance No. 527346-14 as follows:

Grievance #527346 was assigned to Lieutenant Lidwell for investigation and response.

I had the staff on K Block check your property that is in storage and it is all commissary items. There is no legal work in it. You were granted an additional box for storage of legal property on

12

9/22/14 which is what that box is for. You may have a total of five boxes of property, period. I will instruct Lieutenant Lidwell to permit you to have items out of the stored property that is equivalent to one records storage box. The remainder of the property that will not fit into five records center boxes will be destroyed at the conclusion of the grievance process if it is all commissary items. Appeal denied.

(Doc. 41 at 80, Appeal Response).

On October 28, 2014, the Facility Manager denied Hall's appeal of Grievance No. 532998-14 as follows:

The above-listed grievance was assigned to Captain Sunderland for investigation and response.

I have reviewed your appeal. The grievance officer investigated your claims. The investigation revealed you arrived with too much property and were given the proper guidance on receiving permission for extra property. You were given the opportunity to review items present and inventoried. You did not have an issue. The investigation was thorough and complete. Response upheld. Relief denied.

(Doc. 41 at 80, Appeal Response).

## IV. Discussion

### A. Personal Involvement

In order to state a viable section 1983 claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a

person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). "To establish liability for deprivation of a constitutional right under §1983, a party must show personal involvement by each defendant." Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009) ("Because vicarious liability is inapplicable to Bivens and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); see Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

Moreover, it is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. Sutton v. Rasheed, 323 F.3d 236, 249–250 (3d Cir. 2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved

in the events or occurrences upon which Plaintiff's claims are based. Id. As

the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs.... [(Docs. 2, 7) P]ersonal
> involvement can be shown through allegations of personal
> direction or of actual knowledge and acquiescence. Allegations of
> participation or actual knowledge and acquiescence, however,
> must be made with appropriate particularity. (Citations omitted).

There is no evidence of record that Defendant Lidwell was personally

involved in any of the alleged incidents of constitutional deprivation. In fact,

aside from the record evidence Defendant Lidwell denied Grievance No.

527346-14, there is no evidence that Defendant Lidwell was personally

involved in any deprivation of his rights under the Constitution or any other law

of the United States. A prison official's participation in grievance processes,

including appeals, fails to establish the requisite personal involvement."

Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006) ("Although the

complaint alleges that [prison officials] responded inappropriately to [the

plaintiff's] later-filed grievances about his medical treatment, these allegations

do not establish [the prison officials'] involvement in the treatment itself.").

Thus, Defendant Lidwell is entitled to dismissal.

## B.  Access to the Courts Claim

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme

Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828.

However, in Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in Bounds. In Lewis, the Supreme Court held that Bounds did not recognize an independent right in prisoners to have an adequate law library; instead, it concerned the established right of access to the courts. Lewis, 518 U.S. at 351. Thus, the Lewis Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

> Because Bounds did not create an abstract freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary [which claim would be rejected due to such healthy inmate lacking an actual injury so as to confer standing to bring suit]. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," [Bounds 430

16

U.S.] at 823 (internal quotation marks omitted) and the inmate must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to even file a complaint.

Lewis, 518 U.S. at 351.

Moreover, Lewis requires that an inmate seeking to prove denial of access to courts prove that the claim that he was denied bringing was nonfrivolous. See Lewis, 518 U.S. at 353 n. 3. Such a requirement is simply a functional result of requiring an "actual injury." If an inmate is denied access to courts to bring a frivolous suit, he has simply not been injured, i.e., he has suffered no prejudice. See id. ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value-arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all....").

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically,

17

the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." Id. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. " Id. at 414.

The record before this Court reveals that Plaintiff has pursued his direct appeal remedies all the way to the United States Supreme Court. Additionally,

18

Plaintiff timely pursued state court collateral remedies, with the filing of his first PCRA petition on September 30, 2009 and appealing the denial to the Pennsylvania Superior Court, wherein Plaintiff chose to withdraw the appeal on March 5, 2012. Plaintiff then went on to file two additional, albeit, untimely PCRA petitions, on August 20, 2012 and March 28, 2016. Hall's second petition, filed on August 20, 2012 is the petition at issue in the above captioned action and the one in which Plaintiff claims the loss of his legal materials prevented him from advancing his arguments in support.

Initially, the Court notes that Hall filed his second PCRA petition on August 20, 2012, while confined in the RHU. Although not supported by the record, Plaintiff claims that he was under order of court to file an amended petition by October 15, 2014. Plaintiff was released from the RHU on October 6, 2014, nine days prior to the due date of his amended petition. Hall gives no reason as to why he could not have filed a request for an enlargement of time within to file his amended petition. Further, the record reveals that PCRA court issued a 907 Notice on November 17, 2014, giving Plaintiff notice that his petition was going to be dismissed as untimely and an opportunity to respond to said notice. Plaintiff filed nothing. On December 19, 2014, Hall's PCRA petition was dismissed as untimely and as failing to satisfy one of the

enumerated exceptions to the jurisdictional requirement of 42 Pa.C.S. §9545(b). Plaintiff was also given notice of the opportunity to appeal the dismissal of his PCRA petition to the Pennsylvania Superior Court. Plaintiff did not file an appeal.

There is absolutely no evidence of record to establish that Hall was unable to communicate with a lawyer or the courts, or that he has suffered any injury or loss in the form of access to the courts while pursuing a non-frivolous claim. He has not established that he has missed a deadline, was precluded from advancing an arguably meritorious claim or motion, or was otherwise injured. While Plaintiff claims that the loss of his legal work somehow hampered his ability to pursue his second PCRA petition, the record evidence proves otherwise. As such, the Plaintiff does not have an injury, and Defendants are entitled to summary judgment.

## C. **Deprivation of Property**

To the extent that Plaintiff is alleging a Fourteenth Amendment deprivation of property without due process claim, his claim is not actionable under 42 U.S.C. §1983. See Coulson v. Mooney, 2015 WL 1034632 (M.D. Pa. 2015) (dismissing the complaint on screening because the plaintiff had an adequate post-deprivation remedy to address his claim that his cellmate

deliberately destroyed his television and other personal property). The Supreme Court of the United States has held that neither negligent nor intentional deprivations of property violate the Due Process Clause if there is a meaningful post-deprivation remedy for the loss. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527, 530 (1981). The Third Circuit Court of Appeals has "held that the prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process." Barr v. Knaueer, 321 Fed. Appx 101, 103 (3d Cir. 2009) (citing Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 422 (3d Cir. 2000). See also Griffin-El v. Beard, 2010 WL 1837813 (E.D. Pa. 2010) (concluding that a "prisoner's 'failure to [properly] avail himself of such remedy does not affect its adequacy as a post-deprivation remedy'"). Additionally, "the failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Gordon v. Vaughn, 1999 WL 305240 (E.D. Pa. May 12, 1999) (citing Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995).

Moreover, Plaintiff has another post-deprivation remedy, namely a state conversion action. See Crosby v. Piazza, 2012 WL 641938 (3d. Cir. 2012) (holding that to the extent an inmate "is dissatisfied with the outcome of the administrative process, he may still file a state court tort action"); Reavis v. Poska, 2010 WL 2511379 (W.D. Pa. 2010) ("Plaintiff, cannot as a matter of

law, make a claim under the Fourteenth Amendment for a deprivation of property without due process" because the DOC's "internal grievance procedure and the availability of a state tort suit in state court provide adequate post deprivation remedies."); 42 Pa.C.S.A. §8522(a), (b)(3).

The record demonstrates that Plaintiff has filed grievances regarding his lost property, and therefore, has participated in a meaningful post-deprivation grievance procedure. As discussed, if a meaningful post-deprivation grievance procedure is available, regardless of whether the result of this grievance procedure is favorable to the plaintiff, the plaintiff will not have a claim for a violation of the Due Process Clause of the Fourteenth Amendment. Therefore, in accordance with the aforementioned precedential case law, Plaintiff has failed to allege a Fourteenth Amendment violation of the Due Process Clause.

## V.  Conclusion

Based upon the undisputed facts of record, Defendants' motion for summary judgment on all claims will be granted. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 20, 2019**
15-1113-02